(75 App. Div. 141.)

ROGERS et al. v. SMITH et al.

(Supreme Court, Appellate Division, Third Department. July 8, 1902.)

1. WILLS — LAND SUBJECT TO LEGACY — LIABILITY IN INVERSE ORDER OF ALIENATION—LACHES.

Testator devised 26 acres of land to his son, charged with two legacies, of $500 each. The devisee mortgaged it, together with another piece, for $2,000, and subsequently conveyed 12 of the 26 acres to various parties,—the last portion to defendants; procuring in each case a release from the mortgage. The mortgage itself was foreclosed, and the 14 acres sold for $747; the other piece bringing $400. Defendant and his attorney testified that the 14 acres were then worth $3,500, and the other piece $1,000. The 14 acres were afterwards sold to other parties. Held, that defendants were estopped by laches from questioning the foreclosure sale six years thereafter, and their land, being that last alienated, was liable for the legacies.

Appeal from special term.

Action by Julia Minerva Rogers and another against John H. Smith and others. From a judgment for plaintiffs, defendants Smith appeal. Affirmed.

The allegations of the complaint are admitted, and show that one William Coleman, the grandfather of plaintiffs, died in 1881, leaving a will whereby he devised certain of his lands to his son Robert S. Coleman, charged with the payment of two legacies, of $500 each, payable to plaintiffs when they respectively arrived at the age of 21 years; that Julia Minerva Rogers, one of the plaintiffs, was 21 years of age July 16, 1896, and the other plaintiff arrived at that age March 19, 1898; that the legacies have never been paid, and are a first lien upon some 26 acres of land so devised to Robert; that on March 31, 1891, the devisee Robert S. Coleman executed, to secure the payment of $2,000 and interest, a mortgage covering these 26 acres so devised, and one other piece of land, to Glorina Sheldon, which mortgage was recorded April 1, 1891; that subsequently, and prior to the foreclosure of this mortgage, the devisee and mortgagor, Robert S. Coleman, conveyed by deed to various parties at various dates portions of this 26 acres which were covered by the lien of the legacies and the lien of the mortgage (the aggregate of such conveyances embracing about 12 acres), and procured releases from the lien of the mortgage of all land so sold, leaving only the lien of the legacies outstanding. The portion of this 12 acres last conveyed is the piece of land deeded to defendants John H. Smith and Charles E. Smith. This was deeded September 29, 1896, and at the same time the lien of the mortgage thereon was released. That the same year (1896) the mortgagee, Glorina Sheldon, foreclosed her mortgage, and entered a decree of sale September 28, 1896,—the day before the date of the deed from Robert to these defendants; and the remaining part of the 26 acres (being some 14 acres), together with the land not covered by the lien of the legacies, was sold on December 10, 1896, for $1,147.94 (being $100 in excess of the amount of the judgment, etc.). The sale was to L. H. Northup,—a stranger to the title to any part of the premises. Subsequently, on April 16, 1897, Northup conveyed to John H. Derby all of the said 14 acres. That on August 22, 1898, John H. Derby conveyed a part of this 14 acres to Edward Usher, and on May 31, 1900, he conveyed another part of the 14 acres to Archibald Steuart Derby. Two witnesses (defendant Smith and his attorney, Mr. Paris) testified on the trial that, in their opinion, at the time of the foreclosure sale the 14 acres were worth $3,500; they sold for $747.94; also that the other piece then sold was worth $1,000; that piece sold for $400. This is the only evidence which was offered to discredit the sale.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

C. R. Paris (J. M. Whitman, of counsel), for appellants.

Archibald S. Derby (Grenville M. Ingalsbe, of counsel), for respondents Derby and others.

KELLOGG, J. The appellant is aggrieved at the adoption by the trial court of the recognized rule in equity which directs a sale in the inverse order of alienation, and contends that there are peculiar equities which take this case out of the operation of that rule. The peculiar equities pointed out lie in the claim that the sale under the mortgage was for an inadequate price. It must be admitted that if the sale under the mortgage is not now to be attacked, discredited, and these defendants let in to bid thereon for the extinguishment of these legacies under this decree, then that sale operated as an alienation by the owner, Robert S. Coleman, at the date of the mortgage, in 1891,—an alienation prior to any sale of any portion of the 26 acres to any other grantee, and therefore, by the rule, to be last sold to pay the legacies. We do not doubt the power of the court, in a proper case, to adopt a different rule from that stated,—the recognized rule ordinarily applied and understood by vendors and vendees of

realty. But the cases in which a different rule will be adopted must possess some peculiar features. It must be plain to the court that fairness to all parties in interest requires the adoption of a different rule. In the case before us it must be assumed that defendants John and Charles Smith knew when they purchased, in 1896, of the existence of the lien of these legacies; that they also knew of the existence of the mortgage, and that the remaining 14 acres covered by the mortgage were all that stood between them and these legacies. They must also be presumed to have known that, if these remaining 14 acres were wholly absorbed in the payment of the mortgage, their land must be first sold to pay the legacies. They were therefore interested in the foreclosure sale,—interested to the extent of seeing that it was sold for a fair price, or for enough to pay both mortgage and legacies. On the other hand, bidders at that sale must be presumed to have bid with a knowledge of the equity rule that the land bid for and actually sold under that mortgage would be free of the legacies until the defendants' land and all the rest of the 12 acres deeded by Robert S. Coleman had been taken to pay the legacies. Nearly six years have elapsed since the foreclosure sale. The purchaser at that sale has sold the property purchased, presumably for full consideration. His grantee, again, has sold portions of it, presumably for full consideration. Each of the present owners presumably purchased relying upon the equity rule, and believing that no resort for payment of the legacies could be had to the property so foreclosed until these defendants' property and all the balance of the 12 acres sold by Coleman since the date of the mortgage had been exhausted. We are now asked, in view of the laches of these defendants, John and Charles Smith, in failing to see to it that the foreclosure sale brought an adequate sum,—failing for six years to take any steps to set the sale aside, or to obtain relief in any manner from the results of that sale,—to reward them for their lack of diligence by subjecting innocent holders in good faith and for full value to a resale of their property; in other words, requiring them to pay these legacies. This does not strike us as equitable. The sole beneficiary of that foreclosure sale, if the sale was for less than actual value, was Northup, the purchaser thereat. He cannot be reached in this proceeding. While it is undoubtedly a hardship on these defendants to require them to pay these legacies or lose their land, still the hardship is, in a large measure, one which, with reasonable diligence, they might have avoided. There is no view which can be taken of the present conditions which appeals with any force to the equity side of the court to change the well-understood equity rule in matters of this kind. The judgment of the learned trial court was right, and should be affirmed.

Judgment unanimously affirmed, with costs. All concur.